Roy R. Romer State Treasurer State Capitol Denver, CO 80203
Dear Mr. Romer:
I am writing in response to your letters of January 12 and January 13, 1983, from B.J. Thornberry, deputy treasurer, in which she requests an opinion concerning the extent of federal insurance coverage available for deposits of specified state funds. Your inquiry is directed to obtaining maximum insurance coverage by the Federal Deposit Insurance Corporation (F.D. I.C.) and the Federal Savings and Loan Insurance Corporation (F.S.L. I.C.) for state moneys deposited with banks and savings and loan associations (sometimes referred to in this opinion as "insured institutions").
QUESTIONS PRESENTED AND CONCLUSION
1. In order to qualify for the maximum federal insurance coverage of $100,000 for each public unit deposit, will each of the following funds be federally insured to the maximum separate from all other state funds:
a. Water Conservation Board Construction Fund (C.R.S. 1973,37-60-121).
Yes.
b. Public School Permanent Fund (C.R.S. 1973, 22-41-101 and art. IX, § 3, Colorado Constitution).
No.
c. Severance Tax Trust Fund (C.R.S. 1973, 39-29-109).
No.
d. Capital Construction Fund (C.R.S. 1973, 24-75-302).
No.
e. Water Authority Project Acquisition Account.
 Yes, if this fund is the property of the Colorado Water Resources and Power Development Authority.
f. Wildlife Cash Fund (C.R.S. 1973, 33-1-116).
No.
2. If the state treasurer were to obtain statutory authority to establish a "Treasurer's Investment Fund" consisting of all state moneys available for investment and not part of any other statutory fund, would that fund be entitled to maximum insurance coverage separate from all other state funds?
No.
ANALYSIS
This office has previously discussed the availability of federal insurance coverage for deposits of state moneys in Colorado banks and savings and loan associations. This topic was discussed in a letter to you dated April 10, 1978, from Alan H. Friedman, first assistant attorney general, and was the subject of a formal attorney general opinion dated April 20, 1981, concerning insurance coverage of deposits of the State Compensation Insurance Fund. A recent review of applicable federal law has confirmed that the applicable legal principles have not changed significantly.
Each official custodian of moneys of a public unit, a term which includes the State of Colorado and any of its political subdivisions, is separately insured by either the F.S.L. I.C., or the F.D. I.C. up to $100,000 as to deposits of such moneys in a federally insured bank or savings and loan institution in Colorado. See U.S.C. § 1728(d)(1)(ii), 1813(m)(1), 1821(2)(A)(ii) (1982) and 12 C.F.R 561.5 (1982). For purposes of federal insurance coverage, if the same person is official custodian for more than one public unit, he is separately insured to the maximum amount with respect to the aggregate amount of public funds held by him for each public unit
at an insured institution. See 12 C.F.R. 330.8 and564.8 (1982).
The applicable F.D. I.C. regulation provides that the term "public unit" includes any "principle department" of the state, subject to the following conditions:
 (1) The creation of which . . . department has been expressly authorized by State statute, (2) to which some functions of government have been delegated by State statute, and (3) to which funds have been allocated by statute or ordinance for its exclusive use and control . . . . Excluded from the term are subordinate or non-autonomous divisions, agencies, or boards within principal departments.
12 C.F.R. 330.8(a)(6)(C) (1982). (Emphasis supplied.) A substantially similar regulation applies to deposits of public funds made by official custodians with federal savings and loan associations. See 12 C.F.R 561.5a and appendix to part 564, 12 C.F.R. (1982). These applicable provisions of law are discussed in more detail in Mr. Friedman's letter to you dated April 10, 1978.
It is the public unit which is entitled to maximum insurance coverage as to each deposit. If different funds are attributable to the same public unit, then they will be aggregated for insurance coverage purposes unless held by more than one custodian. It is therefore necessary to examine each of the funds under consideration, to determine whether it is attributable to a principle department of the state which qualifies as a public unit.
A. Water Conservation Board Construction Fund
The Colorado Water Conservation Board Construction Fund is created by C.R.S. 1973, 37-60-121 (Supp. 1982) as a continuing fund to be expended exclusively for flood control, water supply and hydroelectric energy facilities together with related recreational facilities. C.R.S. 1973, 37-60-119(1) (Supp. 1982) and C.R.S. 1973, 37-60-122 (Supp. 1982). Subject to the approval of the Colorado General Assembly, moneys in the fund are to be spent by the Colorado Water Conservation Board, a body created by C.R.S. 1973, 37-60-104 (Supp. 1982). That board is delegated authority to conduct feasibility studies of proposed facilities, contracting authority and other functions of state government to carry out its purposes. C.R.S. 1973, 37-60-119 and 37-60-122
(Supp. 1982.).
It is my opinion that the Water Conservation Board is a public unit for purposes of federal insurance coverage. The Water Conservation Board Construction Fund is attributable to that board and would therefore be entitled to the maximum $100,000 insurance coverage separate and apart from other state funds.
B. Public School Fund
The Public School Fund created by art. IX, § 3 of the Colorado Constitution is considered in Alan Friedman's letter of April 10, 1978. After careful review, I have concluded that Mr. Friedman was correct in concluding that the permanent Public School Fund would not be segregated from other state funds for purposes of insurance coverage. This is true because there is no principal department of the state given exclusive control over use of the fund. As Mr. Friedman points out, the "Public School Income Fund" is a fund separate and apart from the Public School Fund and is entitled to separate coverage because exclusive control of the Public School Income Fund is given by statute to the State Board of Education, which does satisfy the requirement of being a principal department.
C. Severance Tax Trust Fund
The Severance Tax Trust Fund is created by C.R.S. 1973, 39-29-109
as a perpetual trust fund for replacement of depleted natural resources and development and conservation of the state's water resources. The treasurer is made custodian of the fund, which is credited with severance tax receipts and moneys repaid from water projects financed by the fund.
The Severance Tax Trust Fund is not attributable to a principal department of the state and would not be entitled to separate insurance coverage. In this regard it is analogous to the permanent Public School Fund.
A separate statutory fund is created by C.R.S. 1973, 39-29-110(1)(a) in the State Department of Local Affairs and entitled the "Local Government Severance Tax Fund." The Department of Local Affairs is a principal department of the state and is given exclusive control of the Local Government Severance Tax Fund.See art. 32, title 24, C.R.S. 1973 and C.R.S. 1973,39-29-110.
The Department of Local Affairs also has responsibility for expending the Local Government Mineral Impact Fund created by C.R.S. 1973, 34-63-102(3)(b)(II) (Supp. 1982). Since all deposits attributable to a public unit are aggregated for purpose of insurance coverage, deposits of the Local Government Severance Tax Fund would be aggregated with deposits of the Local Government Mineral Impact Fund for purposes of insurance coverage.
D. Capital Construction Fund
The Capital Construction Fund is created by C.R.S. 1973,24-75-302 for the purpose of receiving allocations of money to be used for capital construction projects. No principal department of state government is given exclusive control of the fund. Consequently it would not be segregated for purposes of insurance coverage.
E. Water Account Project Acquisition Fund
It is my understanding that this fund was established by 1981 legislation which created the Colorado Water Resources and Power Development Authority. See Senate Bill 19, 1981 Colo. Sess. Laws ch. 435, at 1794, 1798, (codified as C.R.S. 1973,37-95-101 et seq. (Supp. 1982). Section 2 of Senate Bill 19 directed the Colorado Water Conservation Board to transfer $29,999,000 from the Water Conservation Board Construction Fund to the Colorado Water Resources and Power Development Authority to be paid into a debt service reserve fund established pursuant to C.R.S. 1973, 37-95-113 (Supp. 1982).
The Colorado Water Resources and Power Development Authority is a body corporate and a political subdivision of the state, not a state agency. C.R.S. 1973, 37-95-104(1) (Supp. 1982). As such, the authority is a separate public unit and its funds would be entitled to separate insurance coverage apart from state funds. If the above facts do not accurately describe this fund, then my opinion may change.
F. Wildlife Cash Fund
The Wildlife Cash Fund is created by C.R.S. 1973, 33-1-116(1) (Supp. 1982) to be used exclusively for wildlife activities and functions and for impact assistance grants. Since 1979 this fund has not been available for the exclusive use of the Division of Wildlife. See 1979 Colo. Session Laws ch. 304, at 1155. For this reason, the fund would not be segregated for purposes of insurance coverage.
Your final question is whether the treasurer could obtain additional insurance coverage by passage of a statute creating a Treasurer's Investment Fund. That fund would be comprised of any moneys available for investment and not already allocated to another statutory fund.
Even if such a fund were to be established, the public unit for insurance purposes would be the state treasurer. This would mean that all bank deposits for which the treasurer is custodian would be aggregated with the Treasurer's Investment Fund. That fund would not be entitled to separate coverage to the maximum amount.
SUMMARY
In conclusion, it is my opinion that the public unit entitled to maximum insurance coverage is the appropriate principal department of state government which controls the funds in question. If a fund is under control of the treasurer only, then it will not be entitled to separate coverage.
As has been noted in the past, the controlling opinion on the application of federal insurance coverage in these matters would be that of the appropriate officials for the F.D. I.C. and the F.S.L. I.C. Consequently before you act upon the opinions expressed in this letter, you should seek a review of this response and your policy by the appropriate federal officials.
Very truly yours,
 DUANE WOODARD Attorney General
PUBLIC FUNDS TREASURER, STATE
C.R.S. 1973, 37-60-121
C.R.S. 1973, 22-41-101
C.R.S. 1973, 39-29-109
C.R.S. 1973, 24-75-302
C.R.S. 1973, 33-1-116
Colo. Const. art. IX, § 3
TREASURY, DEPT. OF
For purposes of federal insurance coverage of public unit deposits, Ute Water Conservation Board Construction Fund and the Water Authority Project Acquisition Account would each be entitled to the maximum coverage separate from other state funds. The permanent Public School Fund, the Severance Tax Trust Fund, the Capital Construction Fund, the Wildlife Cash Fund and the proposed Treasurer's Investment Fund would not receive separate insurance coverage.